**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 24, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

CHESTER L. BAILEY, JR.,

     Plaintiff - Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
NO. 69 OF CANADIAN COUNTY
OKLAHOMA, a/k/a Mustang School
District; SEAN MCDANIEL, in his
individual capacity,

     Defendants - Appellees.

No. 17-6110

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:16-CV-01055-HE)**
_____

Barrett T. Bowers, Ward & Glass LLP, Norman, Oklahoma (Stanley M. Ward and
Woodrow K. Glass, Ward & Glass LLP, Norman, Oklahoma, with him on the briefs) for
Plaintiff-Appellant.

J. Douglas Mann, Rosenstein, Fist & Ringold, Tulsa, Oklahoma (Jerry A. Richardson,
Rosenstein, Fist, & Ringold, Tulsa, Oklahoma, with him on briefs) for Defendants-
Appellees.
_____

Before **LUCERO**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

We are presented in this appeal with the following question: is a letter written by a public employee, seeking a reduced sentence for his relative, speech on a matter of public concern for the purposes of a First Amendment Garcetti/Pickering inquiry. See Garcetti v. Ceballos, 547 U.S. 410 (2006); Pickering v. Bd. of Educ., 391 U.S. 563 (1968). We conclude that it is. Accordingly we reverse the district court's grant of summary judgement favoring Independent School District No. 69 of Canadian County Oklahoma ("the School District"). Nonetheless, we affirm the district court's grant of qualified immunity to school superintendent Sean McDaniel because the law was not previously clearly established on this issue. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse in part, affirm in part, and remand for further proceedings.

**I**

Chester Bailey Jr. was employed by the School District as Director of Athletics from 2009 to 2016. His excellent performance in this position is not disputed. Throughout his career, Bailey received positive evaluations, indicating that he "exhibited strong leadership abilities," "demonstrat[ed] a high degree of integrity," and was "an asset to the district."

Dustin Graham is Bailey's nephew. In 2014, Graham pled guilty to various state charges largely stemming from video recordings he made of women in the bathroom of his apartment without their consent. Graham also pled guilty to a single count of manufacturing child pornography based on a video he recorded of a minor. There was considerable media coverage of Graham's arrest, trial, and sentencing.

During Graham's sentencing proceedings in 2014, Bailey wrote a letter to the sentencing judge on Graham's behalf. The School District does not issue its employees official letterhead but it was common practice for individuals to produce their own letterhead using the school logo and their titles. Bailey had created such a letterhead and used a sheet to write to Graham's sentencing judge. The letter's header contained the logo for the school district, and gave the address of the Department of Athletics and Bailey's job title.

In the body of the letter, Bailey noted his position as "the Director of Athletics at Mustang Public Schools" and described his background working with young people. Bailey asked the sentencing judge to consider Graham's previous good character and his efforts at rehabilitation. Bailey also noted that Graham acknowledged the wrongfulness of his actions, which in Bailey's experience, was a characteristic of young people who did not repeat their poor decisions.

In 2015, Graham moved the state court for review and reduction of his sentence. More than thirty individuals wrote letters to the sentencing judge on Graham's behalf, including his local state representative. Bailey wrote a second letter to the judge conducting the review, on the same letterhead previously used. The second letter said that Bailey was writing in support of Graham, that he had visited Graham in prison, and that if Graham were released Bailey would be "a positive role model" for him. Graham was released early, only to receive further news coverage when he became embroiled in a dispute with his homeowners' association.

3

McDaniel, Superintendent of Schools for the School District, received a package in July 2016. It contained documents describing Graham's offenses, a copy of Bailey's 2015 letter to Graham's sentencing judge, and a handwritten note. The package was sent by a former in-law of Bailey's who was angry about Graham's early release and other family issues. McDaniel met with Bailey on several occasions to discuss the letter, expressing concern that Bailey used district letterhead to advocate for early release of an individual convicted of a child pornography offense. Bailey stated that nothing in the letter indicated that the School District supported Graham's release, and he pointed to other occasions in which other employees used similar letterhead without incurring adverse consequences. Bailey also told McDaniel about the other letter he wrote to Graham's sentencing judge in 2014. McDaniel later retrieved that letter from Graham's case file.

After the meetings, McDaniel decided to recommend Bailey's termination. He sent Bailey a letter informing him of this decision. The letter cited McDaniel's loss of trust in Bailey's judgment, based on his use of school letterhead to request leniency for a child pornographer and his subsequent refusal to admit fault. A due process hearing before the Board of Education followed. The Board terminated Bailey's employment with the School District, in accordance with McDaniel's recommendation.

Bailey filed suit under 42 U.S.C. § 1983 in the United States District Court for the Western District of Oklahoma, against the School District and McDaniel in his individual capacity. He alleged wrongful termination in retaliation for speech

4

protected by the First Amendment. Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Both parties attached materials outside the pleadings to their respective filings, and thus the district court applied the summary judgment standard under Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(d). Concluding that Bailey's speech did not relate to a matter of public concern, the district court granted summary judgment in favor of the School District and McDaniel. Bailey timely appealed.

## II

We review a district court's grant of summary judgment de novo. Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009). Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, we conclude that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Rohrbough v. Univ. of Colo. Hosp. Auth., 596 F.3d 741, 745 (10th Cir. 2010). If a case involves the First Amendment, "we have an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Id.

Bailey alleges that he was wrongfully terminated for writing letters to Graham's sentencing judge, in violation of his First Amendment right to freedom of expression. "Public employees do not surrender their First Amendment rights by virtue of their employment with the government." Martin v. City of Del City, 179 F.3d 882, 886 (10th Cir. 1999). A "government employer cannot condition public employment on a basis that infringes the employee's constitutionally protected

5

interest in freedom of expression." Burns v. Bd. of Cnty. Comm'rs, 330 F.3d 1275, 1285 (10th Cir. 2003) (quotations omitted). "[B]ecause the government has important interests in maintaining an efficient workplace and promoting the services that it renders, the government has an increased degree of discretion in regulating a public employee's speech." Martin, 179 F.3d at 886.

To achieve the required balance between the interests of public employees in commenting on matters of public concern and the interests of government employers in performing services efficiently, we apply the five-part Garcetti/Pickering test. See Leverington v. City of Colo. Springs, 643 F.3d 719, 723-24 (10th Cir. 2011)(quotations omitted). That test asks:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Dixon v. Kirkpatrick, 553 F.3d 1294, 1302 (10th Cir. 2009). In general, the first three prongs are legal issues to be decided by the court and the last two prongs are factual issues left to the factfinder. Id.

## A

The district court resolved Bailey's retaliation claim on the second prong, holding that his speech did not relate to a matter of public concern. We disagree. Matters of public concern are issues "of interest to the community, whether for

6

social, political, or other reasons." Lighton v. Univ. of Utah, 209 F.3d 1213, 1224 (10th Cir. 2000).[1]  In assessing whether speech pertains to a matter of public concern, we must consider "the content, form, and context of a given statement, as revealed by the whole record." Myers, 461 U.S. at 147-48.  We may consider "the motive of the speaker, and whether the speech . . . merely deals with personal disputes and grievances unrelated to the public's interest." Lighton, 209 F.3d at 1224.

We have never squarely addressed whether a sentencing proceeding is a matter of public concern.  Upon analysis, we concur with the Eighth Circuit's conclusion that "[t]he proper sentencing of convicted criminals is clearly a matter of public concern." Buzek v. Cty of Sanders, 972 F.2d 992, 995 (8th Cir. 1992).  Sentencing proceedings are funded by the public, and take place, at least theoretically, within the public eye as matters of public record.[2]  The government files suit in the name of the people.  These proceedings also implicate public safety, an issue of vital importance to most communities, as well as questions regarding rehabilitation, deterrence, and reintegration of people who have committed criminal acts. See Cox Broad. Corp. v.

---

[1] Bailey argues that the public concern test should not apply to this case, relying on Flanagan v. Munger, 890 F.2d 1557, 1561 (10th Cir. 1989).  There, we held that it is "nearly impossible to logically apply the public concern test to" a case involving a public employee who "engages in nonverbal protected expression neither at work nor about work." Id. at 1562.  Bailey's written letter plainly qualifies as verbal. See Connick v. Myers, 461 U.S. 138, 146 (1983) (applying public concern test to written questionnaire).

[2] Graham's sentencing proceeding took place under at least some non-hypothetical public scrutiny.  Media coverage does not by itself render an issue a matter of public concern. Arndt v. Koby, 309 F.3d 1247, 1254 (10th Cir. 2002).  However, media coverage may serve as indicator of genuine public concern. Id.

7

Cohn, 420 U.S. 469, 492 (1975) ("[C]ommission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions, . . . are without question events of legitimate concern to the public . . . ."). In short, sentencing proceedings are at the core of the public administration of justice, and are therefore quintessentially matters of public concern.

The content of Bailey's letters also weighs against finding them to be purely private. They concerned the very factors a sentencing judge examines in determining whether to release a prisoner into society: Graham's behavior while incarcerated, his personal characteristics, and his level of community support. The public is necessarily intimately concerned with sentencing decisions, and Bailey's letters provided information key to those decisions.

Bailey certainly had a personal interest in the outcome of his nephew's sentencing proceedings. Merely because speech concerns an issue of personal importance does not preclude its treatment as a public matter. Other cases similarly involving issues of personal importance have not precluded the consideration of those issues as public matters. In Deutsch v. Jordan, 618 F.3d 1093 (10th Cir. 2010), we considered a First Amendment claim by a city employee publicly accused of misappropriation of city funds. Id. at 1096. The employee testified in a defamation suit he brought against his accuser, and was later fired. Id. We concluded that, although the employee testified because he wished to clear his name, "clearing his name and responding to a charge of public corruption amounted to the same thing," and therefore his testimony was a matter of public concern. Id. at 1101. Bailey's

8

desire to have his nephew's sentence modified was obviously a factor in his decision to write the letters at issue. However, as in Deutsch, Bailey's comments on a matter of personal concern amounted to a statement on a matter of public concern.

Bailey's opinion regarding the correct outcome of Graham's sentencing cannot render a sentencing any less a public matter, however misguided or distasteful the School District may have found that opinion. We affirm once again that speech, even "upsetting" speech or that which "arouses contempt," is broadly protected by the First Amendment. Snyder v. Phelps, 562 U.S. 443, 458 (2011).

## B

In the alternative, defendants urge us to affirm on the first, third, and fourth prongs of the Garcetti/Pickering test. We may affirm the district court's decision on "any ground supported by the record" provided the litigants have had a fair opportunity to address that ground. Schanzenbach v. Town of Opal, 706 F.3d 1269, 1272 (10th Cir. 2013) (quotations omitted). Because Bailey has presented a genuine issue of material fact as to the three alternative Garcetti/Pickering prongs raised on appeal, we cannot affirm on these grounds.

As to the first prong, defendants argue that Bailey spoke pursuant to his official duties when he wrote the sentencing letters. Speech is made pursuant to an employee's "official duties if it is generally consistent with the type of activities the employee was paid to do." Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir. 2007) (quotation and alteration omitted). This inquiry requires a practical and holistic view of the relationship between the speaker's employment

9

and the speech at issue. Chavez-Rodriguez v. City of Santa Fe, 596 F.3d 708, 713 (10th Cir. 2010). No single factor is dispositive. Id.

Defendants' argument is based in large measure on the fact that Bailey used letterhead with the School District's name and logo on it and included his job title and address. Although use of an employer's letterhead may support a finding that an employee spoke pursuant to his official duties, the record in this case contains substantial evidence suggesting the opposite. McDaniel testified that Bailey's conduct was improper because the letters were for personal purposes. He explained that "Mustang Public Schools is a combination of families and students and staff and business partners" and that Bailey's "nephew has nothing to do with that." McDaniel further averred that writing letters of support was not a requirement of Bailey's job. Viewing this evidence in the light most favorable to Bailey, we conclude the record does not establish that he was acting as an employee when he wrote the letters.

The third prong of the Garcetti/Pickering test requires us to weigh the employee's interest in speaking against the government employer's interest in promoting the efficiency of public service. Brammer-Hoelter, 492 F.3d at 1203. In performing this analysis, we must consider "the manner, time, and place of the speech, as well as the context in which the dispute arose." Weaver v. Chavez, 458 F.3d 1096, 1100 (10th Cir. 2006). The employer bears the burden of showing that restricting the employee's speech was necessary to prevent disruption and provide efficient public service. Cragg v. City of Osawatomie, 143 F.3d 1343, 1346 (10th Cir. 1998). "Vigilance is necessary to ensure that public employers do not use

10

authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech." Rankin v. McPherson, 483 U.S. 378, 384 (1987).

We look to whether the speech at issue "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties, or interferes with the regular operation of the enterprise." Id. at 388. Courts may also consider the potential for disruption of particular speech; we do not require a government employer to allow the disruption to manifest before acting. Weaver, 458 F.3d 1100. However, an employer may not rely on a predicted disruption long after the speech at issue occurred. As we explained in Kent v. Martin, 252 F.3d 1141 (10th Cir. 2001), "[i]f there has been no actual disruption justifying termination during the six months following an employee's protected speech, it is nonsensical to rely ex post facto on a 'prediction' of disruption to tip the balance in favor of an employer's interest in an efficient workplace." Id. at 1146.

The School District argues that it is entitled to summary judgment because the disruption that could have been caused by the implication the School District supported the early release of a child pornographer outweighs Bailey's interest in commenting on the factors relevant to Graham's imprisonment. But, more than two years after the first letter, and more than one year after the second letter, no disruption had materialized. See id. at 1145-46. If not for the School's District's decision to resurrect the matter, it appears the School District's operations would

11

have continued undisturbed. And, as described in Section II.A, supra, both Bailey and the public at large have a strong interest in a sentencing judge receiving information pertinent to his or her sentencing determination.

Defendants also contend that Bailey demonstrated poor judgment by misusing district letterhead, which caused McDaniel to lose confidence in him. They further aver that the district's interest in controlling the use of its logo and official message must be respected. We have no quibble with the latter proposition. See Deschenie v. Bd. of Educ., 473 F.3d 1271 (10th Cir. 2007) ("When a government employee purports to speak on behalf of the government employer, the employer has a strong interest in controlling the speech."). But in arguing that these interests outweigh Bailey's right to free speech, defendants presuppose that Bailey was fired for using letterhead rather than for the content of his letters. McDaniel testified at the due process hearing that he was concerned about Bailey's use of district letterhead, and Bailey's response to McDaniel's inquiry, rather than the content of the letters. But he also conceded that employees of the School District write recommendation letters on district letterhead, and he would not object to a teacher writing such a letter for their own child. Bailey submitted an affidavit indicating that McDaniel allowed him to send letters on district letterhead "for private purposes such as letters of recommendation" on other occasions. Because the summary judgment record is unclear, we must conduct our analysis by assuming that Bailey's termination was actually motivated by the letters' content.

12

For the same reason, we cannot affirm based on the fourth prong of the Garcetti/Pickering test. See Dixon, 553 F.3d at 1302 (considering "whether the protected speech was a motivating factor in the adverse employment action"). Defendants contend that Bailey was not fired for his speech but for his misuse of letterhead. But as described above, the record fairly supports an inference that Bailey was fired for the views expressed in his letters.

## III

The district court concluded that McDaniel was entitled to qualified immunity because Bailey's letters did not address a matter of public concern, and therefore Bailey had not adequately stated a violation of his First Amendment rights. As discussed above, we disagree with that conclusion. However, to defeat qualified immunity, Bailey must do more than establish that McDaniel violated his constitutional rights. Estate of Redd ex rel. Redd v. Love, 848 F.3d 899, 906 (10th Cir. 2017). He must also show that the constitutional right at issue was clearly established at the time of the violation. Id.[3]

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Zia Trust Co. ex rel. Causey v. Montoya, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted). Although there need not be a case with identical facts, the

---

[3] Only McDaniel, and not the School District, has argued for qualified immunity.

constitutional issue must be placed beyond debate by previous jurisprudence. Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam). And the jurisprudence a plaintiff relies on must be "particularized to the facts of the case." White v. Pauly, 137 S. Ct. 548, 552 (2017) (quotation omitted). A general test defining the elements of a constitutional violation, such as the Garcetti/Pickering test, will not provide clearly established law in anything but "an obvious case." Id. (quotation omitted).

As described above, we hold that a sentencing decision is a matter of public concern for the purposes of the First Amendment. But this proposition was not clearly established in our circuit at the time McDaniel acted. Bailey has cited the Garcetti/Pickering test and an Eighth Circuit case with facts similar to this one. See Buzek, 972 F.2d at 994-95. He also relies on the Supreme Court's decision in Cox Broad. Corp., which concerned whether a state may sanction the truthful publication of judicial records. See 420 U.S. at 491-92. These cases are insufficient to demonstrate the existence of clearly established law. In other words, they would not give a reasonable official in McDaniel's position particularized notice that his termination of Bailey for writing letters to a sentencing judge would violate Bailey's First Amendment rights. Therefore, McDaniel is protected by qualified immunity.

**III**

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment as to the School District, and **REMAND** for further proceedings as to the District. We **AFFIRM** the district court's conclusion that McDaniel is entitled to

14

qualified immunity, on the alternative ground that the law at issue was not clearly established at the time he violated it.