LUCERO, J., dissenting.
I respectfully dissent.
Shortly after his promotion to a position as District Supervisor for the San Miguel County Road and Bridge Department, Jerud Butler was demoted for providing truthful testimony in a judicial proceeding. He had testified as a character witness in a child custody matter, and answered truthfully a question about the Department's hours of operation. The proceedings involved a child of his sister-in-law and her ex-husband, a fellow employee of the Department. Had Butler not testified willingly, he would have been compelled to do so through subpoena. Butler testified in his personal capacity and on his own time. For having thus testified, Butler was demoted and reprimanded in writing.
My respected colleagues conclude that the First Amendment does not protect Butler's testimony because his speech did not raise a matter of public concern. They incorrectly interpret Lane v. Franks, 573 U.S. 228, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014), to hold that a supervisor does not violate an employee's First Amendment rights by retaliating against that employee for providing truthful testimony in a child custody proceeding. Neither Lane nor any other case the majority cites carries that muddy water. Accordingly, I do not join the majority's application of the "content, form, and context" analysis required by Lane and cases that precede it. See Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).
My colleagues recognize the form and context of Butler's speech in a judicial proceeding "weigh in favor of treating it as a matter of public concern," (Majority Op. 663), yet proceed to engage in a myopic analysis of the content alone to declare the speech was not a matter of public concern. This exclusive focus on content violates the very Supreme Court mandate the majority claims to honor in rejecting a per se rule. See Snyder v. Phelps, 562 U.S. 443, 454, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) ("In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said.").
It is difficult for me to accept the proposition that society's concern in the custody of a child can be as personal as the majority pronounces. To be sure, participants in the proceeding may have personal concerns regarding the custody of a child, but the overarching public interest in the well-being of children cannot be so easily ignored. "Merely because speech concerns an issue of personal importance does not preclude its treatment as a public matter." Bailey v. Indep. Sch. Dist. No. 69, 896 F.3d 1176, 1182 (10th Cir. 2018). Although the custody of a child is partly personal in nature, it is at its root a societal and public issue.
I would hold that Butler's testimony was on a matter of public concern. Further, I would hold that Butler's First Amendment right to testify in a child custody proceeding without suffering employer retaliation was clearly established. Lane explained that "the form and context of ... speech-sworn testimony in a judicial proceeding-fortify th[e] conclusion" that such speech is a matter of public concern. 573 U.S. at 236-37, 134 S.Ct. 2369. Moreover, the Colorado General Assembly's pronouncements on the importance of child welfare in divorce *666 proceedings render obvious the fact that child custody disputes are matters of public concern.
I
"Matters of public concern are issues of interest to the community, whether for social, political, or other reasons." Bailey, 896 F.3d at 1181 (quotation omitted). "The inquiry turns on the content, form, and context of the speech." Lane, 573 U.S. at 241, 134 S.Ct. 2369 (quotation omitted). As noted above, "no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech." Snyder, 562 U.S. at 454, 131 S.Ct. 1207.
There can be no question that the form and context of in-court testimony establish a significant presumption that the speech raises matters of public concern. As explained by the Supreme Court in Lane, the form and context of "sworn testimony in a judicial proceeding" should "fortify th[e] conclusion" that it involves "a matter of significant public concern." Id. at 236-37, 134 S.Ct. 2369. "Unlike speech in other contexts, testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." Id. (quotation omitted). Not unlike sentencing hearings, which we have held invoke matters of public concern, child custody proceedings "are funded by the public, and take place, at least theoretically, within the public eye as matters of public record." Bailey, 896 F.3d at 1181.
Integrity of our judicial process depends upon witnesses' willingness to provide truthful testimony. I would be far more reluctant than my colleagues to hold that this case presents an exceedingly rare instance in which testimony in judicial proceedings does not raise a matter of public concern. A fundamental tenet of due process is the right to call, confront, and cross examine witnesses. See Green v. Phila. Hous. Auth., 105 F.3d 882, 887 (3d Cir. 1997) ("The utility of uninhibited testimony and the integrity of the judicial process would be damaged if we were to permit unchecked retaliation for appearance and truthful testimony at such proceedings."). As the Fifth Circuit explained, "[t]he goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts speech of public concern." Johnston v. Harris Cty. Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989) (quotation omitted). And the majority cannot seriously dispute that the threat of employer retaliation undermines a witness' willingness to testify, strengthening the presumption that we treat such speech as raising a matter of public concern.[1]
The majority does not cite a single case from this circuit in which sworn testimony in judicial proceedings is so personal in nature as to overwhelm the strong presumption, created by both the form and context of the speech, towards treating such speech as involving matters of public concern. See Bailey, 896 F.3d at 1181-82 (holding character letters submitted in a sentencing proceeding implicated public *667 concerns); Deutsch v. Jordan, 618 F.3d 1093, 1100 (10th Cir. 2010) (holding testimony responding to a charge of public corruption was a matter of public concern); Worrell v. Henry, 219 F.3d 1197, 1206 (10th Cir. 2000) (holding testimony of an investigator in a criminal trial as a paid expert raised a matter of public concern). Nor does it identify any Supreme Court cases so holding. See Lane, 573 U.S. at 241, 134 S.Ct. 2369 (holding testimony in criminal proceedings regarding public corruption raised a matter of public concern).
II
To conclude that Butler's speech as a character witness in a child custody proceeding-an issue that plainly implicates the social fabric of a community-is so personal or private in content that the speech does not raise a matter of public concern requires a leap I am unwilling to make. Butler's speech implicated a child's welfare, and I repeat, a child's welfare is a matter of interest to the community. Colorado has unequivocally declared the placement of children a matter of public concern: "The general assembly hereby finds and declares that the stability and preservation of the families of this state and the safety and protection of children are matters of statewide concern." Colo. Rev. Stat. § 19-3-100.5(1).
Unlike purely private matters that may generally be settled at will by the parties, Colorado has directed courts to make an independent examination of the best interests of the child in custody matters. Compare Colo. Rev. Stat. § 14-10-112(2) (permitting enforcement of conscionable separation agreements, but excepting "the allocation of parental responsibilities"), with Colo. Rev. Stat. § 14-10-124(1.5) (requiring courts to "determine the allocation of parental responsibilities ... in accordance with the best interests of the child giving paramount consideration to the child's safety and the physical, mental, and emotional conditions and needs"). Colorado courts have thus held that the state has a "public interest" in "determining what is in the best interest of the parties and their children in a dissolution of marriage action." In re Marriage of Finer, 893 P.2d 1381, 1388 (Colo. App. 1995). Similarly, they have explained that child support determinations "are not purely private determinations, but serve a public function." Stillman v. State, 87 P.3d 200, 201 (Colo. App. 2003).
The Colorado Supreme Court has also recognized the doctrine of parens patriae, in which the state asserts an interest in the protection of children who cannot care for themselves. E.P. v. Dist. Court, 696 P.2d 254, 258 (Colo. 1985) ("The state as parens patriae has a continuing responsibility to provide for the protection of children within its borders."); see also Gomes v. Wood, 451 F.3d 1122, 1128 (10th Cir. 2006) ("States have a parens patriae interest in preserving and promoting children's welfare."). In light of these explicitly declared public interests, child custody proceedings cannot be treated as wholly private affairs.
My colleagues fail to appreciate these interests in assessing the facts before us. Butler's speech may not be so easily dismissed as arising from purely private motivation. See Bailey, 896 F.3d at 1182 ("Merely because speech concerns an issue of personal importance does not preclude its treatment as a public matter."); Deutsch, 618 F.3d at 1100 ("[T]he speaker's having a highly personal motive for a disclosure does not necessarily mean that the speech is not a matter of public concern."). As in Wright v. Illinois Dep't of Children & Family Servs., 40 F.3d 1492 (7th Cir. 1994), Butler was not speaking out of his own interest in obtaining child *668 custody, but rather truthfully testified to assist the state judiciary in ensuring the welfare of the child whose custody was in dispute. Id. at 1505. Butler's testimony as a character witness directly implicates the very heart of the public concern in determining the appropriate placement for the child.
Further, Butler's allegation that he would have been required to testify pursuant to a subpoena had he not done so willingly refutes the majority's assertion that "Butler's motive for testifying was personal." (Majority Op. 664.) As the Seventh Circuit has recognized, "surely an employee summoned to give sworn testimony in a judicial proceeding has a compelling interest in testifying truthfully and the government employer can have an offsetting interest in preventing her from doing so only in the rarest of cases." Wright, 40 F.3d at 1505 (emphasis omitted). The majority also emphasizes Butler's truthful answer on the hours of the Department's operations as constituting the entirety of his testimony. (Majority Op. 663-64.) But Butler does not argue that the fact that his testimony included the Department's hours of operation rendered the content of his speech public; instead he claims that the content of his testimony as a character witness in the child custody dispute is what makes his testimony public in nature. Given the authorities cited above, that proposition should be uncontroversial.[2]
III
Finally, I would also hold that Butler's constitutional right to testify in child custody judicial proceedings without incurring employer retaliation was clearly established. Generally, "[f]or a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point." Mascorro v. Billings, 656 F.3d 1198, 1208 (10th Cir. 2011). But "in an obvious case" more general "standards can clearly establish the answer, even without a body of relevant case law." Brosseau v. Haugen, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (quotations omitted); see also White v. Pauly, --- U.S. ----, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (reaffirming the "obvious case" rule). In the vernacular, if the constitutional violation is plain, it is unnecessary to resort to such granular detail as to require another case involving a "purple cow."[3]
Butler's claims present such an obvious case. Accordingly, the general standards articulated by the Supreme Court in Lane *669 clearly establish Butler's First Amendment right to testify in a judicial proceeding free from employer retaliation. In Lane, the Court expressly held that speech proffered as testimony in a judicial proceeding "fortif[ies]" the conclusion that such speech raises a matter of public concern. 573 U.S. at 241, 134 S.Ct. 2369. This Supreme Court pronouncement clearly establishes a strong presumption that truthful testimony is not a purely private matter. And in light of Colorado's explicit statements of policy that child custody presents a matter of public concern, see Part II, supra, it should be clear to any reasonable official that testimony in child custody proceedings does not overcome that presumption.

The majority states that courts may "protect the integrity of their truth-seeking function" in other ways, "including subpoena and contempt powers, cross-examination, and criminal sanctions for perjury." (Majority Op. 660.) But Butler in this case testified under the threat of a later subpoena. And the threat of criminal sanctions for perjury, like hypothetical cross-examination, would not encourage reluctant witnesses threatened with the loss of their livelihood to testify.

Even though this matter is before us on a 12(b)(6) dismissal, the Department attempts to introduce its motive for demoting Butler by reference to its written reprimand. That letter tells us Butler was demoted for causing departmental disharmony because another employee of the department was a party to the child custody proceedings at issue. Even if we are to consider this extraneous claim, an employer's motive is not relevant to our public concern analysis, as my colleagues recognize. (Majority Op. 654 n.2.) Instead, the employer's motive may be relevant in deciding whether the employer's interest in maintaining workplace harmony is stronger than the speaker's interest in exercising their First Amendment rights. See Bailey, 896 F.3d at 1181 (summarizing the third prong in Garcetti/Pickering as "whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests"). The majority did not reach this prong of the Garcetti/Pickering test, although I do not consider that thin motive to overwhelm the speaker's constitutional interest.

Courts in different jurisdictions have adopted various animal analogies to describe a case with nearly identical facts, including red cow, spotted dog, spotted horse, and white pony. See Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1390 n.2 (11th Cir. 1993).