**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**June 23, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

GARY A. AVANT,

    Plaintiff - Appellee,

v.

KEN DOKE, individually and in his
official capacity as a County Commissioner
for Muskogee County,

    Defendant - Appellant.

No. 21-7031
(D.C. No. 6:20-CV-00067-RAW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Defendant–Appellant Ken Doke appeals the district court's denial of his

motion for summary judgment based on qualified immunity. Plaintiff–Appellee Gary

A. Avant has filed a motion to dismiss the appeal as untimely. We conclude that the

appeal is timely and therefore deny Mr. Avant's motion. On the merits, we exercise

jurisdiction under 28 U.S.C. § 1291 and affirm in part, vacate in part, and remand for

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

further consideration because the record is inadequately developed and the issues were insufficiently addressed both here and in the district court.

## I. BACKGROUND

### A. *Factual History*

Mr. Avant was a truck driver for Muskogee County from 1993 until November 2018. Ken Doke was elected Muskogee County Commissioner in 2014. Bob Burgess, Deputy County Commissioner and Road Administrator, was Mr. Avant's supervisor, but Commissioner Doke had final authority to fire Mr. Avant.

In 2018, Commissioner Doke ran for reelection. Mr. Avant's family (but not Mr. Avant) campaigned for the opposing candidate. In May 2018, Commissioner Doke and Mr. Burgess met with Mr. Avant to discuss complaints they had received about comments Mr. Avant purportedly had made. County residents Chad and Chris Rolland, who supported Commissioner Doke, reported that Mr. Avant was telling people in the community that a road project had been designed so a new fence could be built on Chad Rolland's property at County expense. Commissioner Doke and Mr. Burgess also received complaints (the source was never identified) that Mr. Avant was telling people in the community that a County employee who was a registered sex offender had been assigned to work near a school. Mr. Burgess, with Commissioner Doke present, told Mr. Avant that his comments were inappropriate and instructed him to stop making them.

In June 2018, Mr. Burgess went on medical leave. On November 6, 2018, Commissioner Doke was reelected. According to Mr. Burgess, when he returned to

2

work in November, he discovered that Mr. Avant was continuing to engage in the same conduct that led to the oral reprimand, so he recommended terminating Mr. Avant's employment. Commissioner Doke accepted that recommendation and fired Mr. Avant on November 29, 2018.

## B. *Procedural History*

Mr. Avant filed an action under 42 U.S.C. § 1983 against Commissioner Doke in his individual and official capacities. The complaint alleged that the termination violated the First Amendment right to political association. Commissioner Doke moved for summary judgment based on qualified immunity. In opposing summary judgment, Mr. Avant noted that late in discovery, Commissioner Doke had testified in his deposition that he fired Mr. Avant because of the alleged comments about the fence and the co-worker.

### 1. **March 23 Order**

In an order filed on March 23, 2021 (the "March 23 order"), the district court addressed not only the political association claim, but, based on statements in Mr. Avant's opposition to the summary judgment motion about Commissioner Doke's deposition, it also addressed what it detected as an unpled First Amendment public employee "free speech" retaliation claim. The court granted qualified immunity on the political association claim because Mr. Avant could not base his claim on the political activities of his family members. That ruling is not at issue in this appeal. As for the unpled "free speech" claim, the court observed that Commissioner Doke had not sought qualified immunity. But it proceeded to deny sovereign immunity

3

because there was a disputed fact issue regarding a constitutional violation and the law was clearly established that a public employer may not retaliate against an employee for speaking on a matter of public concern.

In a footnote at the end of its order, the district court said it had "belatedly noticed yet another twist. Plaintiff testified that he did not in fact make the statements in question." Aplt. App., Vol. II at 308 n.5. The court questioned whether a public employee free speech retaliation claim is viable without speech by a plaintiff. It noted that Mr. Avant had relied on *Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016), in which the Supreme Court held that an employee could bring a First Amendment retaliation claim even if the retaliation was based on the employer's "factual mistake about the employee's behavior." Concerned that *Heffernan* dealt only "with political association rather than free speech," the district court said "[t]he parties may wish to submit supplemental briefs on this point." Aplt. App., Vol. II at 308 n.5. So, pending supplemental briefing, the court "presently denied" Commissioner Doke's motion for summary judgment "as to [the] 'free speech' claim." *Id.* at 308.

2. **May 18 Order**

After Commissioner Doke filed a supplemental brief, Mr. Avant filed a response, and Commissioner Doke filed a reply, the district court issued a short order on May 18, 2021 (the "May 18 order"), concluding that *Heffernan* applied to the free speech claim. The court agreed with Mr. Avant's reading of *Bird v. West Valley City*, 832 F.3d 1188 (10th Cir. 2016), as extending *Heffernan* beyond claims involving

4

political association, and rejected Commissioner Doke's argument that *Bird* is distinguishable.  It then said "the court reiterates its ruling that plaintiff's free speech claim . . . survives summary judgment."  Aplt. App., Vol. II at 384.

\* \* \* \*

On June 17, 2021, Commissioner Doke filed a notice of appeal from the March 23 order and the May 18 order.

## II.  **DISCUSSION**

Most of the issues presented on this appeal are not amenable to appellate review for reasons explained below.  But we are able to resolve two issues:  (1) the timeliness of this appeal and (2) the scope of First Amendment protection under *Heffernan* and *Bird*.  We address the first issue immediately below.  We address the second issue later in the order and judgment to give the reader the benefit of context.  We remand the remaining issues.

### A.  *Timeliness and Appellate Jurisdiction*

Mr. Avant moved to dismiss this appeal as untimely.  *See Bowles v. Russell*, 551 U.S. 205, 214 (2007) ("[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement."); *Duda v. Elder*, 7 F.4th 899, 909 (10th Cir. 2021) (explaining that an order denying qualified immunity is immediately appealable under the collateral order doctrine "to the extent it involves abstract issues of law" (quotations omitted)).  He argues that the district court's March 23 order was the only appealable order and that it triggered the 30-day period in which to file a notice of

appeal. *See* Fed. R. App. P. 4(a)(1)(A). He thus concludes that Commissioner Doke's June 17 notice of appeal was untimely. Commissioner Doke counters that the May 18 order was the final order on the free speech claim and that it triggered the 30-day period, thus making his notice of appeal timely as to both orders. We agree with Commissioner Doke.

In its March 23 order, the district court "presently denied" qualified immunity on the free speech claim. Aplt. App., Vol. II at 308. The words "presently denied" combined with the district court's invitation for the parties to file supplemental briefs shows that the March 23 order was a provisional ruling on the summary judgment motion subject to review of the supplemental briefing.

Once the parties filed their supplemental briefs, the district court "reiterate[d] its ruling that [Mr. Avant's] free speech claim (as opposed to his political association claim) survives summary judgment." *Id.* at 384. Because the district court's March 23 decision to "presently den[y]" summary judgment on the free speech claim concerned qualified immunity, the court's May 18 reiteration of that ruling resulted in the final interlocutory order on the free speech claim under the collateral order doctrine. The notice of appeal was timely when measured from the May 18 order, and our review necessarily requires consideration of both the March 23 and May 18 orders.

We deny Mr. Avant's motion to dismiss this appeal.[1]

### B. *Merits*

We typically review de novo a district court's denial of a summary judgment motion that seeks qualified immunity. *Duda*, 7 F.4th at 910. We ask whether the plaintiff has shown that "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (quotations omitted). Unfortunately, with the exception of the *Heffernan-Bird* issue mentioned above, we cannot provide meaningful review because the record and the district court's analysis were inadequately developed. The parties' appellate briefs suffer similar shortcomings. We therefore remand most of the issues for further factual development, briefing, and district court consideration.

### 1. **Inadequate Record and Analysis**

As pled, Mr. Avant's First Amendment claim alleged only a violation of his right to freedom of political association. But in its March 23 order, the district court "assum[ed]" Mr. Avant's response to the summary judgment motion presented a public employee "free speech claim." Aplt. App., Vol. II at 303 & n.3 (quotations omitted). The court did not request Mr. Avant to amend the complaint. On appeal, Commissioner Doke does not adequately develop an argument that this expansion of

---

[1] Our disposition makes it unnecessary to address Mr. Avant's argument that for the notice of appeal to be timely, we must construe Commissioner Doke's supplemental brief as a tolling motion under Fed. R. App. P. 4(a)(4).

7

the First Amendment claim or lack of amendment was error.  He argues instead (among other things) that the record was inadequately developed on the free speech claim.  *See, e.g.*, Aplt. Opening Br. at 4, 21 n.6.[2]

We agree that the record lacks sufficient development for us to fully address the denial of qualified immunity on the "free speech" claim.  The parties did not appear to contemplate developing factual evidence on a free speech claim during discovery on the political association claim.  They relatedly did not fully brief whether Commissioner Doke is entitled to qualified immunity on such a claim.  And, as we explain below, their appellate briefs fail to address key legal issues that the district court likewise does not appear to have considered.

Without a district court ruling based on a properly developed record and robust party presentation of the issues, we are unable to adequately resolve most of the issues in this appeal.  *See Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1095 (10th Cir. 2007) ("As a court dependent on the testing of ideas in the crucible of the adversary process, we are reluctant to issue rulings the consequences of which we may not be able to foresee and the soundness of which we cannot assess without a

---

[2] On the same day he filed his notice of appeal, Commissioner Doke filed a motion seeking reconsideration of the district court's decision to expand the First Amendment claim and, in the alternative, an opportunity to conduct further discovery on that claim.  The district court concluded that the notice of appeal divested it of jurisdiction to consider that motion and denied it without prejudice to refiling after disposition of this appeal.

meaningful joinder of issues by the parties.").  As explained below, these problems apply to both prongs of qualified immunity.

2. **Qualified Immunity and *Garcetti/Pickering***

a. *Prong one—Constitutional violation under* Garcetti/Pickering

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Education*, 391 U.S. 563 (1968), the Supreme Court provided a framework to evaluate First Amendment retaliation claims brought by public employees against their employers.  Courts apply the five-part *Garcetti/Pickering* test:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Duda*, 7 F.4th at 910 (quotation omitted).  In a typical public employee free speech case, the plaintiff must establish all five elements.  *See id.* at 911.  "The first three elements concern whether the speech is protected and are issues of law for the court to decide." *Id.* (quotations omitted).  "The last two concern whether an adverse action was taken because of the protected speech and are factual issues typically decided by the jury." *Id.* (quotations omitted).

      i.  Does the *Garcetti/Pickering* test fully apply in a perceived speech case?

This is not a typical public employee speech case. The employer, Commissioner Doke, fired Mr. Avant for perceived, not actual, speech, and it is not clear whether and how each of the *Garcetti/Pickering* elements should apply to a perceived speech claim.

For example, at *Garcetti/Pickering*'s second element—whether the speech was about a matter of public concern—we must consider the "content, form, and context" of the speech "as revealed by the whole record." *Singh v. Cordle*, 936 F.3d 1022, 1035 (10th Cir. 2019) (quotation omitted). "Context" involves determining "whether the employee's *primary* purpose was to raise a matter of public concern" rather than to "air a personal dispute." *Id.* at 1035–36 (quotation omitted). But a perceived speech case, as here, presents the question of whether a modified *Garcetti/Pickering* standard must apply given the inability to assess the intent of a speaker who has not spoken. This issue was not adequately presented to or addressed by the district court. The prudent course is to remand for development and consideration of whether the full *Garcetti/Pickering* test applies in a perceived speech case and, if not, how it should be appropriately tailored.

      ii.  Insufficient factual development

Apart from the extent to which the *Garcetti/Pickering* test should apply to this case, our review of the record reveals insufficient information to properly resolve, at least, the following *Garcetti/Pickering* elements:

Element one:  whether the perceived speech fell within the scope of Mr. Avant's official duties;

Element three:  whether the speech caused actual disruption in the workplace;[3] and

Element five:  whether Commissioner Doke would have fired Mr. Avant but for the perceived speech.

As noted, we remand for further development of the record.

### iii.  *Heffernan* defense

Commissioner Doke argues for the first time that even if the *Garcetti/Pickering* test is met here, his decision to fire Mr. Avant was based on a neutral and constitutional policy of "prohibiting employees from making disparaging remarks and spreading rumors," Aplt. Opening Br. at 26, and he is therefore entitled to a defense recognized in *Heffernan*.  But even if we wished to address this issue,[4] we would decline to do so because the record is inadequately developed.

---

[3] "[W]e require the employer to prove actual disruption when the adverse employment action took place long after the employee spoke on a matter of public concern." *Duda*, 7 F.4th at 912–13 (quotations omitted).  The district court employed this standard because it found there had been "delay" in firing Mr. Avant and concluded that the third element was met because Commissioner Doke had "not demonstrated actual disruption, but stated only that the statements were taken as 'personal criticism.'"  Aplt. App., Vol. II at 306 (apparently quoting *id.* at 279, Commissioner Doke's reply to Mr. Avant's statement of facts using term "personal criticism").

[4] Although, "[a]s a general rule we refuse to consider arguments raised for the first time on appeal unless sovereign immunity or jurisdiction is in question," *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992), we might be inclined to overlook any potential waiver because Commissioner Doke never had a proper opportunity to raise this defense in the district court.

11

In *Duda*, we explained that *Heffernan* provides a defense to a First Amendment retaliation claim when "a neutral policy . . . 'existed' *and* . . . '[the employee's] supervisors *were indeed following it*.'" 7 F.4th at 915 (quoting *Heffernan*, 578 U.S. at 275); *see also id.* at 911 (further describing the defense). *Heffernan* included an additional consideration—"whether [the policy] complies with constitutional standards," 578 U.S. at 275. The only relevant evidence we see in the record is Commissioner Doke's testimony that the County has "a personnel policy and making disparaging remarks with another employee publicly or spreading those type[s] of rumors [about the co-worker] really are not acceptable." Aplt. App., Vol. II at 379. This evidence is insufficient to determine if this "policy" existed, what its contours were, whether Commissioner Doke "appl[ied] it equally to all," *Duda*, 7 F.4th at 915, and whether it "complies with constitutional standards," *Heffernan*, 578 U.S. at 275. The parties should be permitted to develop the record relevant to this defense should Commissioner Doke indicate he intends to pursue it.

b. *Prong two—Clearly established law under* Garcetti/Pickering

The underdeveloped record raises questions about the district court's treatment of prong two of qualified immunity. In *Lane v. Franks*, 573 U.S. 228, 243 (2014), the Supreme Court asked whether the law was clearly established law regarding the first element of the *Garcetti/Pickering* test, framing the inquiry as follows:

> The relevant question for qualified immunity purposes is this: Could Franks reasonably have believed, at the time he fired Lane, that a government employer could fire an employee on account of testimony the employee gave, under oath and outside the scope of his ordinary job

12

responsibilities?  Eleventh Circuit precedent did not preclude
Franks from reasonably holding that belief.  And no decision
of this Court was sufficiently clear to cast doubt on the
controlling Eleventh Circuit precedent.

Consistent with *Lane*, we have taken an element-by-element approach to the second prong of the qualified immunity analysis with respect to both elements one and two.  *See, e.g., Knopf v. Williams*, 884 F.3d 939, 949 (10th Cir. 2018) (element one); *Lincoln v. Maketa*, 880 F.3d 533, 538–39 (10th Cir. 2018) (element one); *Seifert v. Unified Gov't of Wyandotte Cnty./Kan. City*, 779 F.3d 1141, 1159–60 (10th Cir. 2015) (element one); *Singh*, 936 F.3d at 1034–35 (element two); *Bailey v. Indep. Sch. Dist. No. 69*, 896 F.3d 1176, 1184–85 (10th Cir. 2018) (element two). Applying that approach, we have examined whether plaintiffs met their burden to show the law was clearly established with respect to the particular element.  *See Knopf*, 884 F.3d at 949; *Lincoln*, 880 F.3d at 539; *Seifert*, 779 F.3d at 1159–60; *Singh*, 936 F.3d at 1035–36; *Bailey*, 896 F.3d at 1184–85.

The district court followed a different course in concluding that the law was clearly established.  Rather than employ an element-based approach, it instead relied on a broad rule of the law stated in *Casey v. West Las Vegas Independent School District*, 473 F.3d 1323, 1333–34 (10th Cir. 2007):  "It has long been established law in this circuit that when a public employee speaks as a citizen on matters of public concern to outside entities despite the absence of any job-related reason to do so, the employer may not take retaliatory action."

We have said, however, in a public employee speech case, that "[c]ourts must not define clearly established law at a high level of generality. Instead, the clearly established law must be particularized to the facts of the case." *Knopf*, 884 F.3d at 944 (citation and quotations omitted). The element-based approach appears consistent with these admonitions.

That said, "general statements of the law are not inherently incapable of giving fair and clear warning" that conduct violates a constitutional right. *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548, 552 (2017) (quotations omitted). But because such statements must make "the unlawfulness . . . apparent," they suffice to clearly establish the law only in "an obvious case." *Id.* (quotations omitted); *see also Bailey*, 896 F.3d at 1184 ("A general test defining the elements of a constitutional violation, such as the *Garcetti/Pickering* test, will not provide clearly established law in anything but 'an obvious case.'" (quoting *White*, 137 S. Ct. at 552)).

Given the thin evidentiary record on the unpled free speech claim—and the lack of briefing in the district court on the second prong of qualified immunity, in particular, whether an element-based approach is necessary at prong two—we decline to resolve whether the district court erred in concluding that *Casey's* general statement of the law satisfies the prong-two requirement. On remand, the parties should be permitted to develop the record as necessary and fully brief whether the law was clearly established as to the *Garcetti/Pickering* test.

14

3. **Retaliation for Perceived Speech Under *Heffernan* and *Bird***

The district court addressed and the parties have adequately briefed one issue relating to prongs one and two of qualified immunity that we can resolve: whether *Heffernan* and *Bird* recognize a First Amendment right against retaliation for perceived speech. We hold these cases not only recognize a right but also that the right is clearly established.

In *Heffernan*, the Supreme Court held that the employer's reason for taking an adverse employment action against an employee determines whether there has been a First Amendment violation regardless of whether the employee engaged in protected activity:

> We conclude that . . . the government's reason for demoting Heffernan is what counts here. When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983—even if, as here, the employer makes a factual mistake about the employee's behavior.

*Heffernan*, 578 U.S. at 273.

Based on the reference to "political activity" and references elsewhere in the opinion to political association, Commissioner Doke argues *Heffernan* applies only to political association claims. *See* Aplt. Opening Br. at 14. But in *Heffernan*'s very next paragraph, the Court used the terms "freedom of speech" *and* "political activity" in describing the right. It characterized the reason for the employee's demotion as abridging the right to free speech:

> We note that a rule of law finding liability in these circumstances tracks the language of the First Amendment more closely than would a contrary rule. Unlike, say, the Fourth Amendment, which begins by speaking of the "right of the people to be secure in their persons, houses, papers, and effects . . . ," the First Amendment begins by focusing upon the activity of the Government. It says that "Congress shall make no law . . . abridging the freedom of speech." The Government acted upon a constitutionally harmful policy whether Heffernan did or did not in fact engage in political activity. That which stands for a "law" of "Congress," namely, the police department's reason for taking action, "abridge[s] the freedom of speech" of employees aware of the policy. And Heffernan was directly harmed, namely, demoted, through application of that policy.

578 U.S. at 273 (alterations in original).

Earlier in its opinion, the Court addressed the nature of the "right." "Is it a right that primarily focuses upon (the employee's) actual activity or a right that primarily focuses upon (the supervisor's) motive, insofar as that motive turns on what the supervisor believes that activity to be?" *Id.* at 271. The answer is the latter—motive: "[T]he the government's reason for demoting Heffernan is what counts here." *See id.* at 273. *Heffernan* recognized a public employee's First Amendment protection from retaliation for perceived speech..

*Bird* applied *Heffernan* to a free speech claim in a case without a political association claim. In *Bird*, the public employer mistakenly believed the employee had made an anonymous call to a reporter that led to a newspaper article portraying the employer in a negative light. *See* 832 F.3d at 1212. She was fired. The issue was whether the employee could prevail on her First Amendment retaliation claim even if she did not make the call but the employer "*believed* she was engaged in a

16

constitutionally protected activity." *Id.* This court said that *Heffernan* had "decided this very issue as it arises in the public employment context." *Id.* The court thus concluded that "*Heffernan* clearly governs" the employee's claim, and her "denial that she was the source of the[] leaks is not fatal to her claim." *Id.*

Commissioner Doke argues that *Bird* is distinguishable because in *Bird* someone other than the plaintiff actually had made the speech in question. Here, based on Mr. Avant's denial that he made the alleged comments, there was no speech at all. But this distinction is not material. Although Mr. Avant said at his deposition that he did not make any of the comments attributed to him, when Commissioner Doke fired him, he believed Mr. Avant made the comments. Under *Heffernan*, his belief matters. We thus see no basis to distinguish this case from *Bird*. We conclude that a right to be free of retaliation for perceived speech was clearly established when Commissioner Doke fired Mr. Avant in November 2018. We affirm the March 23 and May 18 orders to the extent they hold that *Heffernan* and *Bird* clearly establish a First Amendment right applicable to Mr. Avant's free speech claim.

III. **CONCLUSION**

We deny Mr. Avant's motion to dismiss this appeal as untimely. We affirm the March 23 and May 18 orders to the extent they hold that *Heffernan* and *Bird* clearly establish a First Amendment right applicable to Mr. Avant's free speech claim. But we vacate those orders to the extent they deny summary judgment on the First Amendment free speech claim, and we remand this case to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge