EBEL, Circuit Judge.
The First Amendment protects a government employee's speech (1) made as a citizen (2) on a matter of public concern (3) if the employee's right to speak outweighs the government's interest as an employer in an efficient workplace. These are the first three steps of the familiar five-part Garcetti/ Pickering analysis[1] and they present legal questions for a court to resolve. This appeal focuses on the second inquiry, whether a public employee's speech is on a matter of public concern. Generally, a matter of public concern relates to any matter of political, social, or other concern to the community. In order to determine whether speech is on a matter of public concern, the Supreme Court has directed that we consider the content, form and context of the particular speech at issue in a given case.
Plaintiff-Appellant Jerud Butler is a government employee, a supervisor for the San Miguel County, Colorado, Road and Bridge Department. He alleges that his supervisors violated his First Amendment freedom of speech when they demoted him for testifying truthfully in state court as a character witness for his sister-in-law. The state-court proceeding concerned a domestic child custody dispute between Butler's sister-in-law and her ex-husband, who also works for the County's Road and Bridge Department.
The district court dismissed Butler's First Amendment claim with prejudice under Fed. R. Civ. P. 12(b)(6), concluding at step two of the Garcetti/ Pickering analysis that Butler's testimony at the custody hearing, given as a private citizen, was not on a matter of public concern. Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM. In doing so, we reject Butler's assertion that any truthful sworn testimony given by a government employee in court as a citizen is per se always a matter of public concern. The rule Butler suggests, and which several circuits have adopted, gives dispositive weight to the form and context of a public employee's speech (sworn testimony in a judicial proceeding), but fails to give any weight to the content of that testimony. We, instead, employ *654 a case-by-case approach, considering whether, in this particular case, the content of Butler's testimony, as well as its form and context, make it speech involving a matter of public concern. After applying such an analysis here, we conclude that Butler's testimony during the child custody proceeding was not on a matter of public concern. Although Butler's testimony involved a matter of great significance to the private parties involved in the proceeding, it did not relate to any matter of political, social or other concern of the larger community.
I. BACKGROUND
At the motion-to-dismiss stage, we accept as true all of Butler's well-pled factual allegations and view them in the light most favorable to him. See Straub v. BNSF Ry. Co., 909 F.3d 1280, 1287 (10th Cir. 2018). Butler alleged the following: He works for the San Miguel County Road and Bridge Department. On September 1, 2016, the County promoted Butler to a district supervisor position. Six days later, on September 7, "Butler testified in a child custody hearing in Montrose County ... involving his sister-in-law and her ex-husband, who is also an employee of the San Miguel County, Road and Bridge Department." (Aplt. App. 10 ¶ 15.) "Butler was asked to testify as a character witness on behalf of his sister-in-law"; he "would have been required to testify pursuant to a subpoena had he not agreed to testify ...." (Id. ¶¶ 16-17.) "At the hearing, Butler was asked, among other things, about the hours of operation for the San Miguel County Road and Bridge Department." (Id. ¶ 18.) He "responded truthfully to the question based upon his own personal knowledge." (Id. ¶ 19.) "At the hearing, Butler neither stated nor implied that he was testifying on behalf of the County." (Id. ¶ 20.)
Almost two weeks later, Mike Horner, who was San Miguel County's Road and Bridge Director, and Kristl Howard, the County's Human Resources Director, "conducted an investigation into Butler's testimony at the hearing." (Id. 10 ¶ 22.) "Following the investigation, Horner and Howard gave Butler a Written Reprimand and demotion."[2] (Id. ¶ 23.)
Butler sued the two County directors who demoted him, Horner and Howard, under 42 U.S.C. § 1983, alleging that they violated Butler's right to free speech under the First and Fourteenth Amendments by demoting him for testifying truthfully at the custody hearing. See Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31, --- U.S. ----, 138 S.Ct. 2448, 2463, 201 L.Ed.2d 924 (2018) (noting First Amendment applies to states through Fourteenth Amendment). Defendants moved to dismiss this claim under Fed. R. Civ. P. 12(b)(6). The district court granted that motion, ruling that Butler had failed to allege a First Amendment violation because his triggering speech was not on a matter of public concern, and the court *655 dismissed with prejudice Butler's § 1983 claims against the two individual Defendants. It is that decision that Butler challenges on appeal.[3]
II. DISCUSSION
We review de novo the district court's decision to grant Defendants' Rule 12(b)(6) motion to dismiss and in doing so we accept as true all well-pled factual allegations, viewing those facts in the light most favorable to Butler. See Straub, 909 F.3d at 1287. "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.' " Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ).
The individual Defendants, Horner and Howard, sought dismissal of Butler's First Amendment claim, asserting they were each entitled to qualified immunity. To overcome Defendants' qualified-immunity defense, Butler had to allege that (1) the individual Defendants violated Butler's constitutional rights, and that (2) those rights were clearly established at the time of the alleged violation. See Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ; Doe v. Woodard, 912 F.3d 1278 (10th Cir. 2019). A court can consider these two inquiries in any order. See Pearson, 555 U.S. at 236, 129 S.Ct. 808. In this case, the district court granted Defendants' motion to dismiss at the first qualified-immunity inquiry, holding Butler had failed to allege a First Amendment violation.
In reaching that decision, the district court applied the five-part Garcetti/ Pickering analysis, which asks:
(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.
Bailey v. Indep. Sch. Dist. No. 69, 896 F.3d 1176, 1181 (10th Cir. 2018); see also Lane v. Franks, 573 U.S. 228, 236-37, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014). "In general, the first three prongs are legal issues to be decided by the court and the last two prongs are factual issues left to the factfinder." Bailey, 896 F.3d at 1181.
In this case, Defendants conceded the first Garcetti/ Pickering inquiry, that Butler testified as a private citizen, but moved to dismiss arguing that Butler had failed to allege adequate facts to succeed on either the second or third Garcetti/ Pickering inquiry. The district court granted the motion to dismiss, ruling at the second Garcetti/ Pickering step that Butler had failed to allege that his testimony was on a matter of public concern.
"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news *656 interest; that is, a subject of general interest and of value and concern to the public." Lane, 573 U.S. at 241, 134 S.Ct. 2369 (internal quotation marks omitted); see also Bailey, 896 F.3d at 1181 ("Matters of public concern are issues of interest to the community, whether for social, political, or other reasons." (internal quotation marks omitted)). For example, "[s]tatements revealing official impropriety usually involve matters of public concern." Trant v. Oklahoma, 754 F.3d 1158, 1165 (10th Cir. 2014) (internal quotation marks omitted); see also Eisenhour v. Weber Cty., 744 F.3d 1220, 1228 (10th Cir. 2014) ("Speech involves a public concern when the speaker intends to bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety, or other malfeasance within a governmental entity." (internal quotation marks, alterations omitted)). Speech aimed at "air[ing] grievances of a purely personal nature" is generally not on a matter of public concern. Lighton v. Univ. of Utah, 209 F.3d 1213, 1225 (10th Cir. 2000) ; see also Morris v. City of Colo. Springs, 666 F.3d 654, 661 (10th Cir. 2012) ("Speech relating to internal personnel disputes and working conditions ordinarily" does not "address[ ] matters of public concern." (internal quotation marks, alteration omitted)). "Courts construe 'public concern' very narrowly." Leverington v. City of Colo. Springs, 643 F.3d 719, 727 (10th Cir. 2011) (internal quotation marks omitted).
The Garcetti/ Pickering analysis limits the First Amendment protection of a government employee's speech to speech on matters of public concern-"the core value of the Free Speech Clause of the First Amendment," Pickering, 391 U.S. at 573, 88 S.Ct. 1731 -in order "to ensure that citizens are not deprived of fundamental rights by virtue of working for the government." Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). This is not to suggest that the First Amendment only protects speech on matters of public concern. See id. But in the context of public employment,
when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.
Id."When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Id. at 146, 103 S.Ct. 1684. "Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable." Id.; see also Garcetti, 547 U.S. at 418, 126 S.Ct. 1951 (stating that if public employee did not speak as a citizen on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech").
On appeal, Butler asserts two reasons why the district court erred in concluding that his testimony was not on a matter of public concern. First, he argues that any sworn testimony given by a public employee should per se always be a matter of public concern. Secondly, he contends that even if we do not adopt a per se rule, in *657 this case his testimony was, in fact, on a matter of public concern, based on the state's general interest in child welfare and fair custody proceedings. We are not persuaded by either argument.
A. We reject Butler's argument that any sworn testimony given by a public employee is per se always a matter of public concern
Butler first argues for a sweeping per se evidentiary rule that would treat any sworn testimony given by a public employee in a judicial proceeding as always a matter of public concern. We reject such a per se rule because the Supreme Court has, instead, mandated a case-by-case approach, directing us to consider the content, form and context of the testimony in light of the record as a whole in a particular case.
1. The Supreme Court's mandate
The Supreme Court has directed courts, "[i]n assessing whether speech pertains to a matter of public concern," to "consider 'the content, form, and context of a given statement, as revealed by the whole record.' " Bailey, 896 F.3d at 1181 (quoting Connick, 461 U.S. at 147-48, 103 S.Ct. 1684 ). We employ this case-by-case approach in determining whether any other kind of public-employee speech is on a matter of public concern. See id.; Nixon v. City & Cty. of Denver, 784 F.3d 1364, 1367-69 (10th Cir. 2015).
Specifically as to a government employee's speech in the form of sworn testimony given in a court proceeding, the Supreme Court itself applied Connick's case-by-case approach in Lane v. Franks, 573 U.S. 228, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014), to decide whether a public employee's truthful sworn testimony was on a matter of public concern. The overall question presented in Lane was whether the plaintiff, Edward Lane, a public official at a community college, was fired for testifying truthfully in criminal proceedings against a former employee-a state representative-who Lane had fired for collecting her paycheck but never coming to work. Id. at 231-34, 134 S.Ct. 2369. In deciding whether Lane's testimony was a matter of public concern, the Court examined the content, form and context of the particular testimony that Lane gave, concluding:
[t]he content of Lane's testimony-corruption in a public program and misuse of public funds-obviously involves a matter of significant public concern. See, e.g., Garcetti, 547 U.S. at 425, 126 S.Ct. 1951... ("Exposing governmental inefficiency and misconduct is a matter of considerable significance"). And the form and context of the speech-sworn testimony in a judicial proceeding-fortify that conclusion. "Unlike speech in other contexts, testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others." United States v. Alvarez, 567 U.S. [709, 721], 132 S.Ct. 2537, 183 L.Ed.2d 574, ... (2012) (plurality opinion).
Lane, 573 U.S. at 241, 134 S.Ct. 2369.
In Lane, then, the Supreme Court applied the case-specific analysis that the Court previously set forth in Connick, considering the content, form and context of a public-employee's speech in order to decide whether Lane's sworn testimony in that case was on a matter of public concern. Although Lane, in considering the form and context of the government employee's speech, held that sworn testimony in a judicial proceeding "fortifies" a matter-of-public-concern finding, the Court did not declare that sworn testimony in a judicial proceeding is per se a matter of public *658 concern. See Helget v. City of Hays, 844 F.3d 1216, 1228 (10th Cir. 2017) (Tymkovich, C.J., concurring). To the contrary, Lane addressed all the underlying facts, including the particular subject matter of the testimony at issue in determining whether the public employee could maintain a cause of action against his public employer for firing him. We do not doubt that often a government employee's court testimony, even though given as a private citizen, will involve matters of public concern. Even so, Lane indicates that we must consider the content of that testimony before determining whether it is, in a given case, on a matter of public concern. Lane establishes that, while the fact that the speech at issue is sworn testimony given in a judicial proceeding is a factor to consider, that fact is not alone dispositive and, thus, a per se rule to that effect is inappropriate.
Following Lane's analytical framework leads us to familiar territory. Applying Connick's case-by-case consideration of the content, form, and context is how we usually decide whether other types of government-employee speech address a matter of public concern. For example, in Bailey, this court had to determine whether "a letter written by a public employee, seeking a reduced sentence for his relative," was "speech on a matter of public concern." 896 F.3d at 1179. In making that determination, we "consider[ed] 'the content, form, and context of a given statement, as revealed by the whole record.' " Id. at 1181 (quoting Connick, 461 U.S. at 147-48, 103 S.Ct. 1684 ); see also Nixon, 784 F.3d at 1367-69 (considering these same factors in determining whether statements a police officer made were on a matter of public concern).
2. The circuit split that developed prior to Lane
Butler points out that, prior to Lane, the Fifth and Third Circuits adopted a per se rule treating any truthful sworn testimony given by a government employee as always a matter of public concern. See Johnston v. Harris Cty. Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989) (holding, in case addressing government employee's testimony before "County Commissioner's Court" in support of fellow employee's EEOC complaint, that "[w]hen an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern"); see also Latessa v. N.J. Racing Comm'n, 113 F.3d 1313, 1319 (3d Cir. 1997) (stating Third Circuit has held "that a public employee's truthful testimony before a government adjudicating or fact-finding body, whether pursuant to subpoena or not, is a matter of public interest" (citing Green v. Philadelphia Housing Auth., 105 F.3d 882, 887 (3d Cir. 1997) )).[4] These two circuits reasoned:
As a general rule, when a public employee speaks about matters that are of personal interest only, the speech does not address matters of public concern. Connick, 461 U.S. at 147, 103 S.Ct. 1684.... Under certain circumstances, however, the context in which the employee speaks may be sufficient to elevate the speech to the level of public concern....
*659 When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern. Our judicial system is designed to resolve disputes, to right wrongs. We encourage uninhibited testimony, under penalty of perjury, in an attempt to arrive at the truth. We would compromise the integrity of the judicial process if we tolerated state retaliation for testimony that is damaging to the state. If employers were free to retaliate against employees who provide truthful, but damaging, testimony about their employers, they would force the employees to make a difficult choice. Employees either could testify truthfully and lose their jobs or could lie to the tribunal and protect their job security.... Thus, a grand jury witness speaks on matters of public concern when he furnishes truthful information to the grand jury on a matter that the grand jury properly is investigating. Likewise, when one state employee testifies in another employee's civil action against their mutual state employer, the witness's testimony constitutes a matter of public concern for First Amendment purposes. The goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth, a goal sufficiently important to render testimony given in these contexts speech "of public concern."
Johnston, 869 F.2d at 1577-78 (citations, internal quotation marks omitted); see also Green, 105 F.3d at 886-87.
Although Johnston's examples include circumstances that would frequently involve testimony relating to matters of public concern even without a per se rule-testimony about government employers or matters being investigated by a grand jury-these circuits have also applied this per se rule to testimony that is less obviously about matters of public concern. For example, the Third Circuit applied its per se rule to hold that a government employee called by her boss's wife to testify as a character witness for the wife in a divorce proceeding was engaged in speech of a public concern, even though she was called to testify in "a purely private matter." Pro v. Donatucci, 81 F.3d 1283, 1285, 1287-91 (3d Cir. 1996) (relying on Fifth Circuit cases).
In adopting a per se rule, the Third and Fifth Circuits focus on the form (sworn testimony) and context (speech before a government adjudicatory or fact-finding body) of the government employee's speech, to the exclusion of its content, concluding that "the context of a courtroom appearance raises speech to a level of public concern, regardless of its content," Green, 105 F.3d at 887. But such an approach contradicts the Supreme Court's directive in Connick that we consider all three factors-content, form and context-before deciding, on a case-by-case basis, whether a government employee's speech in a given case is on a matter of public concern.
In light of that, other circuits, even before Lane, declined to adopt a per se rule that always treats a government employee's truthful sworn testimony as a matter of public concern. The Seventh Circuit explained:
Drawing on Fifth Circuit cases, [Plaintiff] suggests that we ought to conclude that an employee who testifies before an official government adjudicatory or fact-finding body speaks in a context that is inherently of public concern. See Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir.1989) (citations omitted). Although we share our colleagues' concern for the integrity of the judicial process, our cases have *660 rejected a blanket rule according absolute First Amendment protection to communications made in the course of a lawsuit. Such a rule would contravene both the rationale of [Supreme Court] cases like Connick and Pickering that public employee speech is protected against employer retaliation only if it addresses matters of public concern and the premise of McDonald v. Smith, 472 U.S. 479, 484-85, 105 S.Ct. 2787, 86 L.Ed.2d 384 ... (1985), that there is no sound basis for granting greater constitutional protection to statements made under the Petition Clause than to other run-of-the-mill speech or expression. In short, airing private gripes in the form of a complaint or testimony cannot alter their status as private gripes.
Wright v. Ill. Dep't of Children & Family Servs., 40 F.3d 1492, 1505 (7th Cir. 1994) (citations omitted); see Padilla v. S. Harrison R-II Sch. Dist., 181 F.3d 992, 996-97 (8th Cir. 1999) (declining to apply the Fifth Circuit's per se rule; holding teacher's testimony about propriety of a hypothetical sexual relationship between a teacher and a student was not a matter of public concern); see also Maggio v. Sipple, 211 F.3d 1346, 1351-54 (11th Cir. 2000) (considering form of speech (testimony during non-public grievance hearing), and its context and content (testimony given in support of supervisor's "private grievance," which did not involve government fraud or corruption), in determining that plaintiff's testimony was not on a matter of public concern); Arvinger v. Mayor & City Council, 862 F.2d 75, 76-79 (4th Cir. 1988) (reversing district court's decision that plaintiff's statement "during a coworker's fair employment hearing that he did not know whether ... marijuana found in his van belonged to [his] coworker" was a matter of public concern because in reaching that conclusion, district court "improperly elevated context over content").
These conflicting pre- Lane authorities bolster our decision to reject a per se rule that would treat all public employees' sworn testimony as always a matter of public concern. First and foremost, such a rule contradicts the Supreme Court's mandate, set forth in Connick and applied in Lane, that we decide whether speech is on a matter of public concern on a case-by-case basis, considering the content, form and context of the speech in a given case, on the record as a whole. In addition, although we, like the Seventh Circuit, share the Fifth and Third Circuits' concern for maintaining the integrity of the truth-seeking functions of courts, protecting the integrity of judicial proceedings is not the purpose of the Garcetti/ Pickering analysis. That analysis, instead, determines when the First Amendment protects a public employee's speech, as well as the public's interest in having well-informed views of public employees contribute to our civic discourse. See Garcetti, 547 U.S. at 419, 126 S.Ct. 1951. There are any number of other ways that courts protect the integrity of their truth-seeking function, including subpoena and contempt powers, cross-examination, and criminal sanctions for perjury, without expanding the essential task of Garcetti/ Pickering.
Giving sworn testimony publicly in court often has consequences, even for non-public employees. Witnesses to crimes, witnesses to domestic abuse, witnesses to serious torts or business fraud all can encounter serious repercussions because of their testimony. We, and our nation, salute the courage of such witnesses and recognize that our system of justice depends on such witnesses of courage and integrity. Society seeks to protect such witnesses in a variety of ways, and for public employees testifying as citizens about a matter of public concern, Garcetti/ Pickering affords such witnesses significant First Amendment *661 protection when their interest in speaking outweighs their government employer's interest in an efficient workplace. But we cannot, nor do we see the need to, apply that First Amendment protection using per se rules that contradict the Supreme Court's mandate in Connick and Lane.
3. The Tenth Circuit did not adopt a per se rule prior to Lane
For the first time on appeal, Butler contends that this court has already joined the Fifth and Third Circuits in adopting a per se rule treating all sworn testimony by a government employee as a matter of public concern.[5] But it would be quite extraordinary for this court to adopt a per se rule that directly contradicts the Supreme Court's mandate in Connick and Lane for a case-by-case analysis. In fact, each of the Tenth Circuit cases on which Butler relies was decided before Lane and none expressed or adopted a per se rule. So, Butler cannot point to any Tenth Circuit case, even before Lane, expressly adopting the per se rule for which he now advocates.
Instead, Butler relies on language in some of our earlier case law which he misconstrues to suggest a per se rule. Butler specifically points to Melton v. City of Oklahoma City, 879 F.2d 706, 711-12 (10th Cir. 1989), overruled en banc on other grounds by, 928 F.2d 920, 922 (10th Cir. 1991), Langley v. Adams County, 987 F.2d 1473, 1479 (10th Cir. 1993), Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000), and Lytle v. City of Haysville, 138 F.3d 857, 864 n.2 (10th Cir. 1998).[6] All of the language from these cases on which Butler relies is to the same effect: "The First Amendment protects the right to testify truthfully at trial," Melton, 879 F.2d at 714 ; see also Langley 987 F.2d at 1479 (stating in dicta that "[t]he 'First Amendment protects the right to testify truthfully at trial' " (quoting Melton, 879 F.2d at 714 )); Worrell, 219 F.3d at 1204-05 (stating generally in dicta that "[i]n the last few decades, federal courts have afforded additional protection to witnesses who are employed by the government, concluding that truthful testimony is protected by the First Amendment and that a government employee may not be fired or subjected to other adverse action as a result of such testimony" (citing Melton, 879 F.2d at 714 )); Lytle, 138 F.3d at 864 n.2 (stating in dicta that "[t]his circuit has concluded that a witness's sworn testimony in a court proceeding is entitled to heightened protection under the First Amendment" (citing Melton, 879 F.2d at 714 )).
These general statements on which Butler relies are unremarkable. Of course the First Amendment protects sworn testimony as speech. But that protection, like most constitutional protections, is not absolute. See Virginia v. Black, 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (stating that "[t]he protections afforded by the First Amendment ... are not absolute"); see also *662 W. Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S.Ct. 578, 81 L.Ed. 703 (1937) (stating that, while Fourteenth Amendment prohibits deprivation of liberty without due process, it "does not recognize an absolute and uncontrollable liberty"); United States v. Cox, 906 F.3d 1170, 1184 (10th Cir. 2018) (noting Second Amendment "right to keep and carry arms, like other constitutional guaranties, has limits"). The whole point of the Garcetti/ Pickering balancing test is to determine when and how the First Amendment protects a public employee's speech. See Worrell, 219 F.3d at 1205 (stating, in applying Pickering balancing test, that "First Amendment protection of public employees' testimony is not absolute"). The problem with deeming constitutional protections to be absolute and without exception is determining what happens when one absolute protection conflicts with another absolute constitutional guarantee. Such a potential conflict between absolutes counsels against adopting a blanket, per se constitutional protection and similarly, counsels against adopting a per se rule here in applying the Garcetti/ Pickering analysis to decide when the First Amendment protects a government employee's speech.
Interpreting the general language Butler cites from our earlier, pre- Lane cases in such an absolute way is, any event, contrary to the actual analyses this court applied in those cases. In Melton, for example, this court in fact applied a case-by-case analysis, considering the content, form and context of the testimony at issue, just as Connick required, before concluding that the testimony at issue there was on a matter of public concern. See 879 F.2d at 713-14. It was not until Melton turned to the next step in the Supreme Court's Pickering analysis, balancing the employee's free speech interest with the government employer's interest in an efficient workplace, that this court used the general language about the First Amendment's protection of sworn testimony. See Melton, 879 F.2d at 713-14.
In our other published cases that followed Melton, we used similar general language indicating that the First Amendment protects testimony only in dicta; in those cases, this court did not need to address whether the testimony at issue was on a matter of public concern because the parties agreed that it was. See Worrell, 219 F.3d at 1204-06[7] ; Lytle, 138 F.3d at 864 n.2 ; Langley, 987 F.2d at 1479.
All of these cases, in any event, came before Lane, and none addressed whether to adopt a per se rule treating all truthful sworn testimony given by a government employee in court as always a matter of public concern. Moreover, later Tenth Circuit cases recognize that this court has never expressly considered whether to adopt a per se rule treating all testimony by government employees as a matter of *663 public concern. See Deutsch v. Jordan, 618 F.3d 1093, 1099 n.1 (10th Cir. 2010) (recognizing circuit split, indicating "[t]his circuit's precedents have not explicitly adopted a per se rule," and declining to address the question in that case); see also Helget, 844 F.3d at 1229 (Tymkovich, C.J., concurring) (noting, after Lane, that neither the Supreme Court nor the Tenth Circuit has adopted a per se rule treating all testimony by a government employee as a matter of public concern).
4. In conclusion: We reject Butler's argument for a per se rule and instead apply the case-by-case approach the Supreme Court mandated in Connick and applied in Lane
We, therefore, decline to adopt the per se rule that Butler seeks, which would automatically treat all truthful sworn testimony by government employees as always a matter of public concern, regardless of its content. Instead, following the Supreme Court's mandate in Connick, as applied in Lane and a majority of other circuits, we consider on a case-by-case basis the content, form, and context of a government employee's testimony at issue in a given case in order to determine whether it involves a matter of public concern.
B. Applying such a case-by-case approach here, Butler failed to allege that his testimony during the child custody hearing involved a matter of public concern
Butler's second argument is that, even if we decline to adopt a per se rule for sworn testimony, as we have, his testimony at the child custody proceeding in this particular case was in fact on a matter of public concern. Considering the content, form, and context of that testimony, we disagree.
In considering the content, form, and context of a government employee's speech in prior cases, we have noted that we "may consider the motive of the speaker, and whether the speech merely deals with personal disputes and grievances unrelated to the public's interests." Bailey, 896 F.3d at 1181 (internal quotation marks omitted). "[S]peech that exposes official impropriety generally involves matters of public concern, while speech that simply airs grievances of a purely personal nature typically does not." Nixon, 784 F.3d at 1367-68 (internal quotation marks omitted).
Like the Supreme Court in Lane, we conclude in this case that the form and context of Butler's speech-sworn testimony in a court proceeding-weigh in favor of treating it as a matter of public concern. See Lane, 573 U.S. at 240, 134 S.Ct. at 2380 (stating that "the form and context of the speech" at issue there-"sworn testimony in a judicial proceeding-fortify" the conclusion that Lane's testimony about "corruption in a public program and misuse of state funds" was a matter of public concern).
However, as for the content of the speech, the complaint does not tell us much about Butler's testimony. We know that he was testifying as a character witness for his sister-in-law in a child custody proceeding, which is a purely personal dispute that certainly has great significance for the parties involved but is ordinarily not of general interest to the community as a whole. We know Butler testified, among other things, as to the County Road and Bridge department's hours of operation, although we do not know what he said in this regard.[8] This general topic, *664 however, seems quite uncontroversial; the hours of operation of the County Road and Bridge Department is surely a matter of public knowledge and appears to be a non-controversial fact. While this testimony may have been relevant to the custody determination (particularly the availability of one of the parties to discharge parenting duties to the child involved) it does not bring this testimony on an otherwise personal dispute into the realm of public concern. It does not, for example, touch on any matter involving impropriety or malfeasance of government officials. It appears, instead, that Butler's motive for testifying was personal-to support his sister-in-law and attest to her character in a custody dispute. See Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988) (per curiam) (considering motive of speaker, "i.e., whether the speech was calculated to disclose misconduct or dealt with only personal disputes or grievances with no relevance to the public interests").
Butler asserts that his testimony at a child custody proceeding was a matter of public concern in light of the State of Colorado's concern for the welfare of children and the fair resolution of child custody matters. We accept that Colorado has a general interest in these matters. But "[i]t is not sufficient that the topic of the speech be of general interest to the public; in addition, what is actually said must meet the public concern threshold." Nixon, 784 F.3d at 1368 (internal quotation marks omitted). "A statement does not attain the status of public concern simply because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." Leverington, 643 F.3d at 727. Here, Butler testified in support of his sister-in-law during a personal dispute with her ex-husband over the custody of their child, regarding both the sister-in-law's character and the hours of operation for the County's Road and Bridge Department. There is no indication that this testimony was of interest or concern to the community at large.
Contrast Butler's testimony with the testimony at issue in the Seventh Circuit's decision in Wright, 40 F.3d at 1505-06, a case on which Butler relies. Wright held that the specific government-employee testimony at issue in that case, given in a child custody proceeding, was speech on a matter of public concern. 40 F.3d at 1502, 1505. But Wright did not hold, as Butler appears to assert, that any testimony given in any child custody hearing is a matter of public concern. Instead, Wright held that a social worker's report and testimony regarding "her version of the procedural and substantive shortcomings of the Department's official investigation of the case" was a matter of public concern as it pertained to "the State's methods of investigating an allegation of child abuse," as it addresses serious systemic deficiencies in the operation of a public department. Id. That testimony is much different than Butler's testimony here, speaking to the character of his sister-in-law and stating the hours of operation of the County's Road and Bridge Department. After considering the content, form, and context of Butler's testimony at issue here, we agree with the district court that it was not on a matter of public concern.
III. CONCLUSION
For the foregoing reasons, then, we decline to adopt a per se rule that all truthful testimony given by a government employee is always a matter of public concern. We instead apply the case-by-case approach mandated by the Supreme Court, considering the content, form, and context of the specific testimony by a government employee at issue in a given case. Applying *665 that approach here, we conclude Butler's specific testimony as a character witness for his sister-in-law during a child custody hearing was not a matter of public concern. Therefore, we AFFIRM the district court's dismissal of Butler's § 1983 claims against the two individual defendants, Horner and Howard.

Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) ; Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

In addition to these facts that Butler alleged in his complaint, Defendants also asked the district court, over Butler's objection, to consider facts contained in the written reprimand that the County issued Butler. Butler had not attached that document to his complaint and, although Defendants asserted that they attached the written reprimand to their motion to dismiss, it is not clear that they actually did so. In any event, the district court declined to consider the contents of the written reprimand when the court ruled on Defendants' motion to dismiss. Although on appeal both sides cite to facts apparently contained in the reprimand, neither side has provided us with a copy of the reprimand. Under these circumstances, we also decline to consider it. We do not need to consult the contents of the written reprimand, in any event, in order to resolve this appeal because the reprimand's contents appear to pertain only to step three of the Garcettiem>/Pickering test.

Butler also alleged a state-law claim against the County Board of Commissioners under Colorado's Lawful Off-Duty Conduct Act, Colo. Rev. Stat. § 24-34-402.5. After dismissing Butler's § 1983 claim, the district court declined to exercise supplemental jurisdiction over this state-law claim and dismissed it without prejudice. Butler does not challenge that ruling on appeal.

After Lane, the Fifth Circuit reaffirmed its per se rule in an unpublished decision. See Lumpkin v. Aransas Cty., 712 F. App'x 350, 358 (5th Cir. 2017) (unpublished) (stating that Lane did "not 'unequivocally abrogate[ ]' " that circuit's Johnston line of cases holding that a public employee's sworn testimony is per se a matter of public concern). In light of that, and because Lane did not expressly consider the possibility of a per se rule, we go ahead and address the Third and Fifth Circuits' per se rule, even though we have already concluded that the Supreme Court's cases, Connick and Lane, are dispositive here.

While usually "we will not consider issues raised for the first time on appeal," here Butler has "simply offer[ed] new legal authority for the position he advanced before the district court." Schulenberg v. BNSF Ry. Co., 911 F.3d 1276, 1286 n.4 (10th Cir. 2018) (alterations, internal quotation marks omitted); cf. First W. Capital Mgmt. Co. v. Malamed, 874 F.3d 1136, 1145 (10th Cir. 2017) (noting this court has discretion "to determine an issue raised for the first time on appeal if it is a pure matter of law and its proper resolution is certain" (internal quotation marks omitted)).

Butler also relies on Gilchrist v. Citty, 71 F. App'x 1, 4 (10th Cir. 2003) (unpublished), but, as an unpublished decision, Gilchrist is not binding on our panel. See United States v. Johnson, 911 F.3d 1062, 1071 (10th Cir. 2018) (citing Tenth Cir. R. 32.1(A) ).

Butler contends that, while this portion of Worrell might be dicta, later portions of Worrell that also relied upon the statement that testifying truthfully is protected by the First Amendment were not dicta. But those later portions of Worrell addressed a different question, whether government defendants that were not Worrell's employer violated his First Amendment rights. 219 F.3d at 1209-12. As to those claims against non-employers, Worrell had to show that (1) he engaged in activity protected by the First Amendment, (2) the defendants' actions injured Worrell, and (3) the defendants' actions were substantially motivated by Worrell's protected activity. Id. at 1212-13. It was in that context, in addressing whether Worrell had engaged in protected activity, that Worrell stated that it is clearly established that testifying truthfully is an activity protected by the First Amendment. Id. at 1213, 1215. In that analysis, it was unnecessary for us to decide whether Worrell's testimony was on a matter of public concern. And it bears repeating that the First Amendment protection of sworn testimony is not absolute.

Butler has never asserted that he could adequately plead that his testimony was on a matter of public concern by amending his complaint.