NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0208n.06

No. 19-3545

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CANDICE BAIRD,

      Plaintiff-Appellant,

v.

HAMILTON COUNTY DEPARTMENT OF JOB
AND FAMILY SERVICES; MOIRA WEIR, in her
official and individual capacities; CHERYL
KELLER, in her official and individual capacities;
CHRISTOPHER BIERSACK, in his official and
individual capacities; DENNIS P. DETERS, in his
official capacity; CHRIS MONZEL, in his official
capacity; TODD PORTUNE, in his official capacity;
DENISE DRIEHAUS,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Apr 14, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

---

Before: GILMAN, McKEAGUE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. The Hamilton County Department of Job and Family Services suspended one of its managers, Candice Baird, after (in the Department's judgment) Baird showed poor judgment regarding the care of her own granddaughter. Baird later brought this suit, claiming that the Department and some of its managers violated her First and Fourteenth Amendment rights when they suspended her. The district court granted summary judgment to the defendants. We affirm.

I.

In 2016, Baird was a "Children Services Manager" at the Hamilton County Department of Job and Family Services. In that role, she supervised caseworkers and ensured that they

understood the Department's child-welfare policies. At home, Baird cared for her adult son, Chico, who suffers from schizoaffective disorder, paranoia, mania, and depression. Chico lived in an apartment building near Baird's; she herself lived with Chico's infant daughter, N.C., and N.C.'s mother, Samantha Cruz.

In March 2016, a neighbor of Chico called Baird to report loud noises and shouts coming from Chico's apartment. Baird then called Chico, who was sobbing and distraught. He was also babysitting N.C. by himself. Baird called a psychiatric response team (the "Crisis Unit") to notify them of the situation; then she went to Chico's apartment. N.C. was unharmed when Baird got there. Members of the Crisis Unit then arrived and observed that Chico was drunk and apparently suicidal. They called the police, who came to the scene and eventually tasered Chico and took him to the hospital.

A social worker with the Crisis Unit reported the incident to the Hamilton County Department of Job and Family Services for further investigation. An investigator (albeit one from a neighboring county) conducted a home visit, during which she interviewed Chico and Baird. Afterward the investigator requested an emergency order to remove N.C. from Baird's home, on the ground that Baird was basically in denial about the danger that Chico posed to N.C. A magistrate granted the investigator's request and the Department removed N.C. from Baird's home the same day.

A few days later, Baird petitioned a magistrate for custody of N.C. The magistrate promptly held a hearing at which the witnesses presented conflicting evidence. Specifically, the investigator testified that Baird had concealed from her Chico's history of domestic violence, whereas Baird testified that the investigator had never asked her about that topic. Similarly, the Crisis Unit's report stated that Chico's apartment had been in a state of disarray: the cable box had

been ripped out of the wall, fragments of wood were strewn about, and Chico was bleeding from his hand. Yet Baird testified that Chico's apartment was fine. The magistrate ultimately denied Baird's petition on the ground that Baird did not fully appreciate Chico's potential danger to N.C.

A few months later, the Department held a pre-disciplinary conference with Baird and her attorney. The Department suspended Baird for 10 days, likewise finding that, despite her status as a trained child-welfare professional, her testimony at the hearing showed that she had failed to appreciate the danger that Chico posed to N.C.

Baird thereafter brought this suit under 42 U.S.C. § 1983, claiming that the defendants had suspended her in retaliation for testimony at the hearing, in violation of her First Amendment rights, and that her suspension had violated her right to due process under the Fourteenth Amendment. Thereafter, during discovery, Baird's attorney revealed that, during the course of events giving rise to the suit, Baird had secretly recorded a meeting with Department personnel, which itself violated the Department's employment policy. That violation was Baird's third, when combined with the events giving rise to her suspension and an earlier unrelated incident. The Department therefore fired her in accordance with its progressive discipline policy. Baird then amended her complaint to include her termination. The district court granted summary judgment to the defendants. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017).

## A.

Baird argues that the Department violated the First Amendment when it suspended her in retaliation, she says, for her testimony at N.C.'s custody hearing. To prevail on that claim, Baird

must show, among other things, that her testimony was a matter of public concern. *Id.* at 464. "Speech involves matters of public concern when it . . . relat[es] to any matter of political, social, or other concern to the community[.]" *Lane v. Franks*, 573 U.S. 228, 241 (2014) (quotation marks omitted).

Here, Baird's testimony focused almost exclusively on questions related to her son's mental health, his fitness as a parent, and whether he posed a danger to N.C. The point of her testimony was to secure custody of her granddaughter—a matter of personal interest, not one of public concern. *See Rodgers v. Banks*, 344 F.3d 587, 597 (6th Cir. 2003). Baird contends that her testimony was per se a matter of public concern because it was sworn to and given in open court. But our circuit has not adopted that per se rule, s*ee Rorrer v. City of Stow*, 743 F.3d 1025, 1047–48 (6th Cir. 2014), and *Lane* impliedly rejects it. *See Lane*, 573 U.S. at 241; *Butler v. Bd. of Cty. Comm'rs for San Miguel Cty.*, 920 F.3d 651, 657–61 (10th Cir. 2019).

Baird also contends that she raised a matter of public concern when she testified that she saw no need for the Department to remove N.C. from her home and that, on the evening that the Department did so, it gave Baird no reason for the removal. But those assertions amounted to a few sentences among more than 50 pages of testimony, and likewise focused on Baird's own private concerns rather than the public's. The district court was correct to grant summary judgment on this claim.

The same is true of Baird's due process claim. That claim rests on her allegation that she had a property interest in her employment, that the Department (as a public employer) was required to give her advance notice of any reasons for which it might suspend her, and that it failed to do so. The premise of Baird's argument is accurate for terminations by a public employer, *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985), but not necessarily for

suspensions, *see Grant v. Homar*, 520 U.S. 924, 929–30 (1997).  In any event, the Department did hold a pre-disciplinary conference with Baird prior to her suspension, before which it gave her notice of the charges against her and the documents that it would rely upon to prove those charges. And that conference had all the hallmarks of due process: Baird had the opportunity to testify, defend herself, and cross-examine witnesses.  *See Loudermill*, 470 U.S. at 545–46.

Yet Baird says that the Department's notice was insufficient because it listed her testimony at the hearing as the reason for her suspension, whereas the Department later said it suspended her in part for an additional reason: her failure to disclose Chico's history of domestic violence to the investigator.  But that failure itself was a source of dispute during the hearing, so she had ample reason to know that it might be a basis for her suspension.

The district court's judgment is affirmed.